UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JASON SYDNEY, *Individually and on Behalf*
*of all Other Similarly Situated Persons,*

Plaintiffs

-against-

NAP INDUSTRIES, INC., MARLOW PRINTING CO.,
INC., MORRIS LOWY, *Individually,* YULE LOWY,
*Individually,* JACQUES FREUND, *Individually*, and
LEIBY FREUND, *Individually,*

Defendants.

---------------------------------------------------------------X

Case No.

CV12-3085

**COLLECTIVE & CLASS
ACTION COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

BRODIE, J.

POHORELSKY, M.J.

Plaintiff, JASON SYDNEY, by his attorneys, PHILLIPS & PHILLIPS, Attorneys at Law,

PLLC, upon information and belief, complains as follows:

## INTRODUCTION

1.  Plaintiff, individually and on behalf of all other similarly situated current and former hourly

    employees working for Defendants, brings this action against Defendants pursuant to the

    Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State Labor

    Law, Articles 6 & 19 ("NYLL") for failure to pay wages due and owed for hours worked in

    excess of forty (40) hours per workweek, and seeks to recover unpaid back wages, and an

    additional amount as liquidated damages, reasonable attorneys' fees and costs. **Defendants**

    **have required Plaintiff and other similarly situated employees to work more than forty**

    **(40) hours a week, but have not paid them overtime wages for all the hours they**

    **worked over forty (40) in a week.**

2.  Plaintiff also complains pursuant to 42 U.S.C. §1981 and the New York City Human Rights

Law, Administrative Code §8-107, *et seq.* ("NYCHRL"), and seeks damages to redress the injuries he has suffered as a result of being **Discriminated against**, **Harassed**, and **Retaliated against** by his employer solely due to his **Race (Black)** and **National Origin (Trinidadian)**.

## JURISDICTION

3.  Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216 (b)).

4.  The Court also has jurisdiction pursuant to 28 U.S.C. §1331 and §1343.

5.  The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as such claims are derived from a common nucleus of operative facts.

6.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as Defendants reside within the Eastern District of New York.

## PARTIES

7.  At all times material, Plaintiff JASON SYDNEY ("SYDNEY") is a resident of the County of Kings and State of New York.

8.  Plaintiff SYDNEY, both individually and on behalf of all other similarly situated persons, are also collectively referred to as "Plaintiffs."

9.  The term "Plaintiff SYDNEY and other Plaintiffs" refers collectively to Plaintiff SYDNEY and all persons who were employed as "hourly employees" by Defendants during the past six (6) years and were not paid overtime for hours worked in excess of forty (40) hours per week.

2

10. Upon information and belief, Plaintiffs were regularly engaged by Defendants to work more than forty (40) hours in a week without being paid the overtime premium pay for all the hours they worked in excess of forty (40) in a week, as required by the FLSA and NYLL.

11. Plaintiffs were engaged in commerce while working for Defendants.

12. At all times relevant hereto, Defendant NAP INDUSTRIES, INC. ("NAP"), was a domestic business corporation, duly authorized and existing by virtue of the laws of the State of New York, with its principal place of business located at 667 Kent Avenue, Brooklyn, NY 11211.

13. At all times material, Defendant NAP was and is a "at the forefront of innovation in every facet of the flexible packing industry. Every step of the process – from graphic design to pre-press… from laser micro-perforating to pre-formed pouch conversations – is performed on-site, at Nap's state-of-the-art facility."

14. At all times relevant hereto, Defendant MARLOW PRINTING CO., INC. ("MARLOW"), was a domestic business corporation with its principal place of business located at 667 Kent Avenue, Brooklyn, NY 11211.

15. At all times material, Defendant MARLOW was and is in the business of producing commercial flexographic printing and lithographic printing rubber production.

16. That at all times relevant hereto, Plaintiff SYDNEY was a full-time employee of Defendant NAP and Defendant MARLOW.

17. That at all times relevant hereto, upon information and belief, Defendant MORRIS LOWY ("MORRIS") was a resident of the State of New York.

18. That at all times relevant hereto, Defendant MORRIS was the "Owner" and "Vice-President" of Defendant NAP and Defendant MARLOW.

19. That at all times relevant hereto, Defendant MORRIS was Plaintiff SYDNEY's supervisor

and/or had supervisory authority over Plaintiff SYDNEY.

20. That at all times relevant hereto, upon information and belief, Defendant YULE LOWY ("YULE") was a resident of the State of New York.

21. That at all times relevant hereto, Defendant YULE was the "Owner" and "President" of Defendant NAP and Defendant MARLOW.

22. That at all times relevant hereto, Defendant YULE was Plaintiff SYDNEY's supervisor, and/or had supervisory authority over Plaintiff SYDNEY.

23. That at all times relevant hereto, upon information and belief, Defendant JACQUES FREUND ("JACQUES") was a resident of the State of New York.

24. That at all times relevant hereto, Defendant JACQUES was the "Owner" and "President" of Defendant MARLOW and "Finance Executive" of Defendant NAP.

25. That at all times relevant hereto, Defendant JACQUES was Plaintiff SYDNEY's supervisor and/or had supervisory authority over Plaintiff SYDNEY.

26. That at all times relevant hereto, upon information and belief, Defendant LEIBY FREUND ("LEIBY") was a resident of the State of New York.

27. That at all times relevant hereto, Defendant LEIBY was the "General Manager" of Defendant NAP and Defendant MARLOW.

28. That at all times relevant hereto, Defendant LEIBY was Plaintiff SYDNEY's supervisor and/or had supervisory authority over Plaintiff SYDNEY.

29. Defendant NAP, Defendant MARLOW, Defendant MORRIS, Defendant YULE, Defendant JACQUES, and Defendant LEIBY are collectively referred to herein as "Defendants."

30. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is

suffered or permitted to work. As a result, including as further described below, all Defendants are liable as "employers" under the FLSA.

31. Defendants are also jointly and severally liable as joint employers under 29 C.F.R. § 791.2 for the violations complained of herein.

32. At all times material, Defendants did, and continue to do, substantial business in New York, and engage in commerce or the production of goods for commerce within the meaning of the FLSA.

33. Upon information and belief, for each of the three (3) years preceding the filing of the initial complaint herein, Defendants have employed two (2) or more individuals "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."

34. Upon information and belief, Defendants grossed more than $500,000.00 in the past fiscal year.

## THE FLSA CLASS

35. While class certification pursuant to FRCP Rule 23 is not required for an FLSA collective action, defining the class of eligible FLSA Plaintiffs is useful, as the Court will be asked to order Defendants to produce the names and addresses and other information of potential opt-in Plaintiffs.

36. The class of eligible opt-in Plaintiffs consists of all persons who worked for Defendants as "hourly employees" at any time from three (3) years prior to the filing of this case, to entry of judgment in this case (the "Class" and "Class Period," respectively).

37. Although the precise number of putative class members is unknown, and facts upon which

5

annually, for all applicable periods in question.

45. At all times relevant to this action, Defendants willfully failed to pay Plaintiff SYDNEY and other Plaintiffs at the premium overtime rate for all hours worked in excess of forty (40) hours in a workweek, in violation of 29 U.S.C. § 207.

46. At all times relevant to this action, due to Defendants' FLSA violations, Plaintiff SYDNEY and other Plaintiffs are entitled to recover from Defendants their unpaid wages, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. §216(b).

## THE RULE 23 CLASS

47. Plaintiff SYDNEY also brings this action on behalf of himself and all other persons similarly situated pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

48. The class of eligible Plaintiffs consists of all persons who worked for Defendants as "hourly employees" at any time from six (6) years prior to the filing of this case to entry of judgment in this case ("Rule 23 Class").

49. As the members of the Rule 23 Class are numerous and of an unknown number, joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are numerous members of the Rule 23 Class.

50. The claims of Plaintiff SYDNEY are typical of the claims of the Rule 23 Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy — particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court

against a corporate defendant.

51. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

52. Plaintiff SYDNEY is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

53. Plaintiff SYDNEY has the same interests in this matter as all other members of the Rule 23 Class and Plaintiff SYDNEY's claims are typical of the Rule 23 Class.

54. There are common questions of law and fact affecting all members of the Rule 23 Class which predominate over any questions only affecting the individual members of the Rule 23 Class, including but not limited to:

    a. Whether Defendants employed the members of the Rule 23 Class within the meaning of the New York Labor Law;

    b. What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

    c. Whether Defendants failed and/or refused to pay the members of the Rule 23 Class premium pay for hours worked in excess of forty (40) hours per workweek within the meaning of the New York Labor Law;

    d. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interests, costs and disbursements and attorneys' fees; and

    e. Whether Defendants should be enjoined from such violations of the New York Labor Law in the future.

55. This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(2), since the unlawful actions of Defendants, as alleged herein, have been taken on grounds equally applicable to all members of the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

56. Alternatively, this action is maintainable as a class action under Fed.R.Civ.P. 23(b)(1)(A), as

the prosecution of separate actions by individual members of the Rule 23 Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Rule 23 Class, which would establish incompatible standards of conduct for Defendants who oppose the Rule 23 Class.

57. Alternatively, this action is maintainable as a class action under Fed.R.Civ.P. 23(b)(3) as common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversies between the parties.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedure that violate the New York Labor Laws.

## MATERIAL FACTS RELEVANT TO CLASS AND COLLECTIVE ACTION

58. Plaintiff SYDNEY and other Plaintiffs were all employed by Defendants as "hourly employees."

59. The work performed by Plaintiff SYDNEY and other Plaintiffs required no capital investment.

60. Throughout Plaintiff SYDNEY's tenure, Defendants have required Plaintiff SYDNEY and other Plaintiffs to regularly work in excess of forty (40) hours per workweek.

61. However, Defendants have **willfully failed to pay Plaintiff SYDNEY and other Plaintiffs any overtime compensation (one and one-half times their regular hourly rate) for hours worked over forty (40) per week, in violation of the FLSA and the NYLL.**

62. Plaintiff SYDNEY and other Plaintiffs have not been paid a rate of one and one-half times

their regular rate of pay for all hours worked in excess of forty (40) hours each week.

63. Defendants have also failed to pay Plaintiff SYDNEY and other Plaintiffs a premium/additional amount for hours worked in excess of ten (10) hours per day.

64. Defendants violated the FLSA and the NYLL by not paying Plaintiff SYDNEY and other Plaintiffs for overtime work as required.

65. Defendants' failure to pay Plaintiff SYDNEY and other Plaintiffs the proper wages required by law was and is willful.

66. Throughout all relevant time periods, upon information and belief, Defendants have also failed to post in a conspicuous place at the workplace and/or to keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA and the NYLL.

67. Throughout all relevant time periods, upon information and belief, Defendants have also failed to maintain accurate and sufficient time records of the regular and overtime hours the Plaintiffs worked.

68. Defendants deprived Plaintiff SYDNEY and other Plaintiffs of any information or understanding of their rights under federal and state overtime laws.

## MATERIAL FACTS RELEVANT TO PLAINTIFF'S DISCRIMINATION CLAIMS

69. In or about 2004, Plaintiff SYDNEY began his employment with Defendants as a "Machine Operator" in Defendants' Printing Department, earning approximately $7.25 per hour.

70. At all times relevant hereto, Plaintiff SYDNEY has been an exemplary employee and has always received compliments for his work performance.

71. In fact, as a result of Plaintiff SYDNEY's excellent work performance, Defendants have

awarded him numerous raises in pay, ultimately to approximately $10.50 per hour.

72. **However, throughout Plaintiff SYDNEY's employment, Defendants have consistently and continuously harassed and discriminated against Plaintiff SYDNEY solely due to his race (Black) and national origin (Trinidadian), and are now retaliating against Plaintiff SYDNEY for complaining of discrimination.**

73. By way of example, in or about November 2008, Defendant LEIBY approached Plaintiff SYDNEY while he was working at the machines and said, **"Clean up the machine! You monkey! You are a monkey and a Mexican."** Plaintiff SYDNEY was absolutely flabbergasted that his supervisor was using such offensive racial slurs when speaking to him.

74. Furthermore, as yet another example of Defendant LEIBY's discriminatory treatment, Defendant LEIBY began to arbitrarily refuse to pay Plaintiff SYDNEY his wages for weeks at a time, again solely due to Plaintiff SYDNEY's race and national origin. For example, in or about late-November 2008, when Plaintiff SYDNEY asked Defendant LEIBY for his paycheck, Defendant LEIBY responded, **"Monkeys get their check last."** Feeling confused, humiliated, and offended, Plaintiff SYDNEY was completely speechless and simply walked away.

75. When Plaintiff SYDNEY returned to again ask Defendant LEIBY for his check, Defendant LEIBY refused and said, **"Because you are a monkey and a Jackass, you cannot get your check."** Plaintiff SYDNEY was disturbed and offended by these overtly bigoted statements, but wasn't sure what to do.

76. Over the following three (3) weeks, Defendant LEIBY still refused to hand over Plaintiff SYDNEY's check, even telling Plaintiff SYDNEY, **"You all work for us. You are all our slaves."**

11

77. Furthermore, in or about December 2008, Defendant LEIBY told Plaintiff SYDNEY, **"Your black ass better come to work tomorrow, because if you don't, you will not get your check again.  Remember you work for me like all Mexicans."** While Plaintiff SYDNEY was trying to give Defendants the benefit of the doubt regarding their discriminatory comments, the constant barrage of derogatory remarks left Plaintiff SYDNEY with no choice but to believe that Defendants were intentionally trying to hurt and offend Plaintiff SYDNEY.

78. In fact, it wasn't until approximately one (1) week later that Defendants finally gave Plaintiff SYDNEY his paycheck.

79. Furthermore, in or about mid-2009, Defendant MORRIS suspiciously told Plaintiff SYDNEY that anytime his coworker, Ramiole, is absent from work, Plaintiff SYDNEY is prohibited from also coming to work that day.  This was clearly solely based on Plaintiff SYDNEY's race and national origin, as Defendant MORRIS only applied this capricious rule to Plaintiff SYDNEY and did not apply this rule to any of the non-Black employees.

80. Throughout 2009, Defendant LEIBY also continued to constantly harass Plaintiff SYDNEY and say racially-discriminatory comments to Plaintiff SYDNEY, including **"Black ass"** and **"Stupid monkey."**

81. In addition, Defendant LEIBY continued to illogically refuse to give Plaintiff SYDNEY his paycheck and would instead withhold Plaintiff SYDNEY's paycheck for weeks at a time, meaning that **Plaintiff SYDNEY would be forced to work without any pay**.

82. In or about November 2009, when Plaintiff SYDNEY again asked Defendant LEIBY for his check before he went home for Thanksgiving, Defendant LEIBY responded, **"Black people don't celebrate Thanksgiving.  Furthermore, you are not an American so you are not**

*getting your check."*

83. As such, **in or about December 2009, Plaintiff SYDNEY complained to Defendant JACQUES that Defendant LEIBY was refusing to give him his paycheck solely due to Plaintiff SYDNEY's race and national origin**. Although Defendants were now made aware of the constant race-based and national origin-based discrimination, Defendants totally ignored Plaintiff SYDNEY's concerns and completely failed to address the situation.

84. Unfortunately, in retaliation for complaining about, and objecting to, Defendant LEIBY's blatant harassment and discrimination, Defendants actually increased the severity of their harassment and discrimination of Plaintiff SYDNEY.

85. In or about June 2010, Defendant YULE approached Plaintiff SYDNEY, complained about a roll being on the ground of which Plaintiff SYDNEY had no knowledge, and screamed at Plaintiff SYDNEY, **"Asshole. All you monkeys are the same. Jackass, put the roll on it now!"**

86. In or about July 2010, although Plaintiff SYDNEY never worked on Sundays, Defendant LEIBY randomly demanded Plaintiff SYDNEY come into work on a Sunday saying, **"Your black ass better be here on Sunday, or else I will fire you."** After Plaintiff SYDNEY displayed some resistance, Defendant LEIBY said, **"I control all the black people's life. Fucking Bitches."**

87. Also **in or about July 2010, Plaintiff SYDNEY reported the ongoing and pervasive discrimination and retaliation to Defendant JACQUES and Defendant MORRIS**, who shockingly defended Defendant LEIBY by saying he was just joking. Just like before, Defendants failed to take any action in response to Plaintiff SYDNEY's complaint and allowed the discrimination and harassment to continue.

13

88. In or about July/August 2010, Defendants transferred Plaintiff SYDNEY to their Lamination Department, at which point Defendant YULE became Plaintiff SYDNEY's new direct supervisor. Unfortunately, on an ongoing and pervasive basis, Defendant YULE also harassed and discriminated against Plaintiff SYDNEY solely on the basis of his race and national origin.

89. By way of example, in or about August 2010, Defendant YULE told Plaintiff SYDNEY, **"Hey Jason, you are a Jackass and an asshole and sometimes I think your brains are in your ass and you are a stupid monkey."**

90. Even more despicable, throughout the remainder of 2010 and all throughout 2011, Defendant YULE continually called Plaintiff SYDNEY a **"Stupid Nigger," "Black Asshole,"** and **"Black Jackass,"** and Plaintiff SYDNEY continually complained about it to Defendant JACQUES and Defendant MORRIS, who never took any action in response, and allowed the unlawful actions to continue.

91. In or around early 2012, Defendant YULE told Plaintiff SYDNEY, **"You're a Jackass and you don't know what you are talking about. Sometimes I think your brain is in your ass."**

92. After a moment of silence, Defendant YULE returned to verbally harassing Plaintiff SYDNEY, telling Plaintiff, **"You were born through your mothers' ass but I was born a Lowy. You're an ass. You're stupid."**

93. In or about April 2012, Defendants transferred Plaintiff SYDNEY back to the Printing Department and back under the direct supervision of Defendant LEIBY.

94. **As a result of Defendants wholly refusing to address the pervasively hostile work environment, Defendant LEIBY was allowed to continue to relentlessly harass and**

14

**discriminate against Plaintiff SYDNEY solely due to his race and national origin.**

95. In or about May 2012, Defendants switched Plaintiff SYDNEY to a different machine where Plaintiff SYDNEY would be forced to lift over 70 lbs. Defendants only did this because Defendants were well aware of Plaintiff SYDNEY's disability and knew that he would unable to fully use the machine. **Defendant LEIBY clearly transferred Plaintiff SYDNEY to a new machine for the sole purpose of forcing Plaintiff SYDNEY to voluntarily resign from his position**.

96. In or about June 2012, Defendant LEIBY again singled out Plaintiff SYDNEY and randomly ordered him to work on a Sunday, again for the sole purpose of causing Plaintiff SYDNEY distress due to his race and national origin and in retaliation for constantly complaining about his discriminatory actions.

97. Just like he had done numerous times before, Plaintiff SYDNEY immediately complained to Defendant MORRIS and Defendant JACQUES.

98. However, only days later, Defendant MORRIS walked up to Plaintiff SYDNEY while he was working, purposefully kicked over a bucket full of solvent, and then yelled at Plaintiff SYDNEY to clean it up.

99. Plaintiff SYDNEY feels extremely uncomfortable attending work each day, as **this pattern of discrimination and retaliation is ongoing and continuous.**

100. Plaintiff SYDNEY has been humiliated by the actions of Defendants.

101. Plaintiff SYDNEY has made numerous complaints to Defendants regarding the discrimination and retaliation. However, Defendants have completely ignored each of Plaintiff SYDNEY's complaints.

102. The aforementioned conduct by Defendants has unreasonably interfered with Plaintiff

15

SYDNEY's work environment.

103. Defendants have engaged in a pattern and practice of permitting, condoning and even encouraging the above type of illegal behavior.

104. Plaintiff SYDNEY has begun to suffer from severe anxiety and depression as a result of Defendants' discriminating and harassing work environment.

105. **Plaintiff SYDNEY feels that any ordinary person in his shoes would feel compelled to resign from his employment.**

106. Plaintiff SYDNEY has been unlawfully discriminated against, humiliated, retaliated against, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

107. Plaintiff SYDNEY's performance has been, upon information and belief, above average during the course of her employment with Defendants.

108. The above are just some of the acts of harassment, discrimination and retaliation that Plaintiff SYDNEY has experienced on a regular and continual basis during his tenure with Defendants.

109. Defendants' hostile actions have created an unlawfully hostile working environment that no reasonable person would tolerate.

110. Plaintiff SYDNEY has been retaliated against due to his objections to Defendants' racially-discriminatory and unlawful conduct.

111. Defendants' actions and conduct were and are intentional and intended to harm Plaintiff SYDNEY.

112. **Defendants have treated Plaintiff SYDNEY different (harassed him and discriminated against him) solely due to his race and national origin.**

113. **But for the fact that Plaintiff SYDNEY is Black and Trinidadian, Defendants would not be treating him different.**

114. Defendant MORRIS, Defendant YULE, Defendant JACQUES, and Defendant LEIBY, all Plaintiff SYDNEY's supervisors, have regularly exposed Plaintiff SYDNEY to a racially offensive and hostile work environment.

115. Defendant NAP and Defendant MARLOW **have knowledge and/or acquiesce** in the discrimination and retaliation, as Plaintiff SYDNEY has complained to all of Defendants' owners, Defendant MORRIS, Defendant YULE, Defendant JACQUES, and Defendant LEIBY.

116. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

117. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he is suffering from severe emotional distress and physical ailments.

118. As a result of the acts and conduct complained of herein, Plaintiff has suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

119. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of all lower Courts.

120. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

121. As per the Court of Appeals case of *Patrowich v. Chemical Bank*, 63 NY2d 541 [1984]) those employees with "an ownership interest in the company" or "the power to do more than

17

carry out personnel decisions made by others" may be held personally liable for sexual harassment (see *Monsanto v. Electronic Data Systems Corporation*, 141 AD2d 514, 515 [2d Dept 1988]; *Bridges v. Eastman Kodak Company*, 822 F Supp at 1029; cf *Sier v. Jacobs Persinger & Parker*, 236 AD2e 309 [1st Dept 1997]).

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## OVERTIME

122. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

123. Defendants willfully employed Plaintiffs in the afore-mentioned enterprise for workweeks longer than forty (40) hours and failed to compensate Plaintiffs for their employment in excess of forty (40) hours per week at a rate of at least one and one-half times the rate at which they were employed.

124. Defendants failed to pay overtime wages to Plaintiffs as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

125. Defendants' failure to pay Plaintiffs overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

126. Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. §255.

127. Defendants' failure to comply with the FLSA caused Plaintiffs to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW
## OVERTIME

128. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this

complaint as if same were set forth herein fully at length.

129. Plaintiffs were employees of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.).

130. Defendants failed to pay Plaintiffs a premium for hours worked in excess of forty (40) hours per week.

131. Defendants violated Plaintiffs' rights to overtime pay under Title 12 NYCRR 142-2.2.

132. Defendants also failed to pay Plaintiffs a premium/additional amount for hours worked in excess of ten (10) hours per day.

133. Under New York State law, an employee is entitled to an extra hour's wages for any day when the employee's "spread of hours" exceeds ten (10) hours (12 NYCRR § 142-2.4).

134. Defendants also violated New York State Labor Law, including but not limited to, 12 NYCRR § 142-2; §§ 198, 162, 663 et seq.

135. Defendants' failure to comply with the New York Labor Law overtime protections caused Plaintiffs to suffer loss of wages and interest thereon.

136. Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful.

137. Defendants' failure to pay "spread of hours" wages caused Plaintiffs to suffer loss of wages and interest thereon.

138. Defendants' failure to pay "spread of hours" wages was willful.

139. On account of such violations, Defendants are liable to Plaintiffs for actual, statutory and liquidated damages.

## AS A THIRD CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW
## EMPLOYEE RECORDS

140. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

141. Defendants failed to keep employee-specific records documenting, *inter alia,* actual hours worked in each week, in violation of New York Labor Law § 661 and 12 NYCRR 142-2.6.

142. Defendants failed to furnish statements with pay and hour information to Plaintiffs, in violation of 12 NYCRR 142-2.7.

## AS A FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW
## NOTICE POSTING

143. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

144. Defendants failed to post any notice summarizing the employee's rights in a conspicuous place at the workplace in violation of 12 NYCRR 142-2.8, thereby depriving Plaintiffs of any information or understanding of their rights under state minimum wage and overtime laws.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

145. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

146. 42 U.S.C. §1981 states in relevant part as follows:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> (b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981

147. Plaintiff has been discriminated against because of his race as provided under 42 U.S.C. §1981 and has suffered damages as set forth herein.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

148. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

149. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

150. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff because of his race and national origin.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

151. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

152. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the

doing of any of the acts forbidden under this chapter, or attempt to do so."

153. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

154. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

155. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

156. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

157. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

158. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this

section.

159. Defendants violated the section cited herein as set forth.

## AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

160. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

161. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.  the employee or agent exercised managerial or supervisory responsibility; or

        2.  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3.  the employer should have known of the employee's or agent's

discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

162. Defendants violated the section cited herein as set forth.

## JURY DEMAND

163. Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, 42 U.S.C. §1981, the New York State Labor Law, and the New York City Administrative Code §8-107 *et seq.*, in that Defendants discriminated against Plaintiff on the basis of his race and national origin and retaliated against Plaintiff for complaining of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress,

pain and suffering and injury to his reputation in an amount to be proven;

D. Conditionally certifying this action as a collective action under the FLSA;

E. Ordering Defendants to produce names of eligible class members and approve the required notices for mailing;

F. Declaring that Defendants' violations of wage and overtime wage protections were willful;

G. Granting judgment to Plaintiffs for their claims for unpaid wages as secured by the FLSA as well as an equal amount in liquidated damages, and awarding Plaintiffs costs, expenses, and reasonable attorneys' fees;

H. Granting judgment to Plaintiffs for their claims for unpaid wages as secured by the NYLL, as well as an equal amount in liquidated damages and interest, and awarding Plaintiffs costs, expenses, and reasonable attorneys' fees;

I. Awarding Plaintiffs punitive damages;

J. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

K. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       June 18, 2012

PHILLIPS & PHILLIPS,
ATTORNEYS AT LAW, PLLC

William K. Phillips, Esq. (WP0409)
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, NY 10004
212-248-7431
tpglaws@yahoo.com